## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANTHONY DEWAYNE CHAPMAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    1:06CV179 |
| | ) |
| THEODIS BECK, Secretary of | ) |
| the Department of Correction, | ) |
| | ) |
| Respondent. | ) |

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On May 14, 2003, in the Superior Court of Guilford County, Petitioner was convicted by a jury of first-degree burglary, attempted robbery with a firearm, two counts of assault with a deadly weapon, possession of a handgun by a felon, habitual felon status, and violent habitual felon status. He was sentenced to two terms of life without parole plus 100-120 months and 75 days imprisonment in cases 02 CRS 23712-13, 91696-99, and 93444. Petitioner appealed his conviction, and the North Carolina Court of Appeals issued an unpublished opinion finding no error on December 21, 2004. Petitioner next turned to North Carolina's collateral review process for relief. He filed a pro se motion for appropriate relief ("MAR") in the trial court and, when it was denied on October 14, 2005, filed a petition for certiorari with the North Carolina Court of Appeals. This, too, was denied. Petitioner now seeks habeas relief in this Court.

## Facts

In its unpublished opinion, the North Carolina Court of Appeals summarized the facts as follows:

> The State presented evidence tending to show that at approximately 2:30 a.m. on 17 July 2002, three masked intruders broke into a residence in Greensboro occupied by Mr. And Mrs. Rudolph Young. Mr. Young reached for a pistol next to his bed and pulled the trigger. One of the intruders returned fire and a shootout ensued in the residence. One of the gunshots struck one of the intruders. The three intruders fled from the apartment. Approximately one hour later a man identifying himself as "Marcus Wall" went to the emergency room of Baptist Hospital in Winston-Salem seeking treatment for a gunshot wound to his nose. He stated that he had been shot in the crossfire of a "drive by" shooting on Martin Luther King Drive in Winston-Salem. Winston-Salem Police Department officers went to the scene of the alleged shooting and could find no evidence of a shooting at this location. The Winston-Salem Police Department learned about the incident in Greensboro and notified the Greensboro Police Department about the person at Baptist Hospital. Detective Solomon of the Greensboro Police Department drove to Baptist Hospital and was present during an interview of defendant by Detective Flynn of the Winston-Salem Police Department regarding whether defendant had been at the scene of the Greensboro incident. Defendant denied any involvement. Detective Solomon told defendant he was going to obtain a search warrant to take a blood sample from him to determine whether he had been present at the Greensboro crime scene. As the detectives were leaving the hospital, they learned defendant had left the hospital wearing only his hospital gown. Defendant was subsequently apprehended. Pursuant to a search warrant, the police obtained fingerprint, saliva, and blood samples from defendant.

> The fingerprints revealed Mr. Wall's true identity as defendant Anthony Dewayne Chapman. The blood samples taken from defendant matched blood found inside the Greensboro residence. Bullet casings found in the Greensboro residence were determined to have been fired by four different handguns.

## Petitioner's Claims

In this Court, Petitioner raises numerous grounds for relief. He claims that: (1) the trial court erred in failing to dismiss the charge of possession of a firearm by a felon where the State failed to prove Petitioner had been convicted of a felony prior to the offense date;[1] (2) there was insufficient evidence to prove that he possessed a firearm;[2] (3) the habitual felon and violent habitual felon statutes are unconstitutional;[3] (4) he received ineffective assistance of trial and appellate counsel; (5) his conviction was obtained by evidence obtained pursuant to an unconstitutional search and seizure; (6) his conviction was obtained by violating the privilege against self-incrimination; and (7) his conviction was obtained by use of evidence from an unlawful arrest. Respondent moves for summary judgment on all of these claims.

## Procedural Bar

In order to receive habeas relief on any claim, a petitioner must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). The rationale for this requirement is axiomatic.

---

[1]In his petition, he admits that, at trial, he stipulated that he had previously been convicted of a felony. Thus, the claim is without merit on its face. Moreover, the North Carolina Court of Appeals also found the stipulation freely given by the Petitioner and valid. State v. Chapman, 167 N.C. App. 655, 605 S.E.2d 742 (2004).

[2]As Respondent points out, the court of appeals found the evidence sufficient because there was testimony that all three burglars fired weapons. Id.

[3]The court of appeals found ample authority for the habitual felon statute. Id.

-3-

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 536 U.S. 838, 844 (1999). In a two-tiered appellate system like North Carolina's, "one complete round" includes not only direct appeal to the State's intermediate appellate court, but also the opportunity to petition for discretionary review in the North Carolina Supreme Court. See id. Claims not raised in a petition to the state's highest court are non-exhausted and therefore procedurally barred from federal habeas review. Id. Moreover, failure to exhaust state law remedies will result in the claims being procedurally barred from federal review if, upon return to the state courts, those courts would find that the claims are procedurally barred. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)(citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)). North Carolina General Statute § 15A-1419 imposes just such a mandatory procedural bar for claims that could have been presented on appeal or in a prior motion for appropriate relief. Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001).

In the present case, all but one of Petitioner's habeas claims are procedurally barred for failure to exhaust state court remedies. Petitioner only raised the first three of his seven habeas claims on direct appeal to the North Carolina Court of Appeals, which found no error after considering his claims on their

-4-

merits.  Petitioner never filed a petition for discretionary review following this denial, and his window of opportunity to pursue this method of review may now be closed.  As such, these claims are procedurally barred under O'Sullivan v. Boerckel and Breard v. Pruett.  Moreover, the claims are without merit.  See n.5, infra.

Petitioner originally brought three of the four remaining claims in his MAR, but these are also procedurally barred.  Only the ineffective assistance claim, which arose, at least in part, upon appeal, is properly before the Court.  In contrast, Petitioner's claims that his conviction was obtained through a Miranda violation, a Fourth Amendment search and seizure violation, and by use of evidence from an unlawful arrest were clearly available to him on direct appeal.  As indicated in the order denying the MAR, Petitioner simply failed to bring them at the appropriate time.[4]

Because Petitioner could have raised the claims just listed, but did not, North Carolina's mandatory procedural bar now applies to them and they are barred from review by this Court.  The only way that this bar could be lifted is if Petitioner were to show cause to excuse the default and prejudice resulting from the

---

[4]On the merits, Respondent also shows that the Fourth Amendment claim is barred from federal review by Stone v. Powell, 428 U.S. 465 (1976), since Petitioner had the opportunity for a full and fair review of the issue in state court.  He further shows that Petitioner fails to identify the alleged Miranda violation by showing how his "confession" was used.  Finally, Petitioner fails to show that holding him at the hospital was unlawful or that evidence was illegally obtained as a result.

default or if he can demonstrate that a failure to hear the claims will result in a miscarriage of justice. <u>Rose</u>, 252 F.3d at 683.

To demonstrate cause, Petitioner must "make 'a showing that the factual or legal basis for a claim was not reasonably available'" at the time that his claim should have been made. <u>McCarver v. Lee</u>, 221 F.3d 583, 591 (4th Cir. 2000)(quoting <u>McClesky v. Zant</u>, 499 U.S. 467, 494 (1991)). To demonstrate prejudice he "must show 'not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" <u>Id.</u> at 592(quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)). Last, "[i]n order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, [Petitioner] must show actual innocence." <u>Smith v. Dixon</u>, 14 F.3d 956, 974 (4th Cir. 1994)(citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 338–339 (1992)).

Here, Petitioner's sole contention regarding cause and prejudice is that he did not know how to proceed following his direct appeal. Unfortunately, this allegation, even if true, fails to demonstrate cause, or that a basis for his claims was unavailable at the time of appeal, or that Petitioner was actually innocent. As such, his lack of knowledge cannot excuse his default. In the end, all of the claims in the petition, except for the ineffective assistance claim, are procedurally barred and

-6-

cannot be considered on federal review.     The Court will now
consider Plaintiff's sole remaining claim on its merits.

<h2 align="center"><b><u>Standard of Review</u></b></h2>

If the Court finds that Petitioner's claims were adjudicated
by the state courts on their merits, it must then apply 28 U.S.C.
§ 2254(d)'s highly deferential standard of review to Petitioner's
claims.   Under that standard, habeas relief cannot be granted in
cases where a state court has considered a claim on its merits
unless the decision was contrary to or involved an unreasonable
application of clearly established federal law as set out by the
United States Supreme Court or the state court decision was based
on an unreasonable determination of the facts.   A state court
decision is "contrary to" Supreme Court precedent if it either
arrives at "a conclusion opposite to that reached by [the Supreme]
Court on a question of law" or "confronts facts that are materially
indistinguishable from a relevant Supreme Court precedent and
arrives at a result opposite" to that of the Supreme Court.
<u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000).   A state decision
"involves an unreasonable application" of Supreme Court law "if the
state court identifies the correct governing legal rule from [the
Supreme] Court's cases but unreasonably applies it to the facts of
the particular state prisoner's case." <u>Id.</u> at 413. "Unreasonable"
is not the same as "incorrect" or "erroneous," and the
reasonableness of the state court's decision must be judged from an

-7-

objective, rather than subjective, standpoint.  Id. at 409-410.  A
holding is not reasonable simply because precedent written by one
of the Nation's jurists agrees with it.  Id.  As for questions of
fact, state court findings of fact are presumed correct unless
rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Here, Petitioner's claim that his trial and appellate counsel
provided ineffective assistance was raised in his motion for
appropriate relief and was denied, at least summarily, on its
merits.  Therefore, the strict standards for review set out above
apply to the evaluation of Petitioner's claim.[5]

## Discussion

In his petition, Petitioner contends that two individuals, his
trial attorney and his appellate counsel, rendered ineffective
assistance of counsel in his case.  This claim is evaluated using
a two-part test:

> In order to establish an ineffective assistance of
> counsel claim . . . [a petitioner is] required to
> establish that his "counsel's representation fell below
> an objective standard of reasonableness," measured by the
> "prevailing professional norms," [citing Strickland v.
> Washington, 466 U.S. 668, 688 (1984)], and "that there is
> a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would
> have been different," id. at 694, 104 S.Ct. 2052. "Unless
> a defendant makes both showings, it cannot be said that
> the conviction or death sentence resulted from a

---

[5]Because the North Carolina Court of Appeals addressed claims 1-3 on the
merits, see nn. 1-3, supra, those claims are also subject to this deferential
standard of review and should be dismissed on this ground as well.  Claims may
be dismissed on their merits notwithstanding the failure to exhaust state court
remedies.  28 U.S.C. § 2254(b)(2).

-8-

breakdown in the adversary process that renders the result unreliable." Id. at 687, 104 S.Ct. 2052.

In determining whether counsel's performance was deficient, "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689, 104 S.Ct. 2052. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks omitted).

Similarly, in evaluating whether the defendant has shown actual prejudice from any such deficient performance, it is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." Id. at 693, 104 S.Ct. 2052. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. When challenging a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S.Ct. 2052.

Fisher v. Lee, 215 F.3d 438, 446-447 (4th Cir. 2000). Furthermore, mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue. Green v. Johnson, 160 F.3d 1029 (5th Cir. 1998).

Here, Petitioner claims that his trial counsel was prejudicially deficient in the following respects: (1) failing to object when the trial judge cross-examined a witness, (2) failing to object when it was discovered during trial that the police

-9-

obtained the search warrant with false information, and (3) failing to bring forward two potential witnesses who could prove Petitioner's innocence. These claims are all deficient for being conclusory. Petitioner also claims that appellate counsel failed to raise these issues on appeal even though Petitioner discussed them with him.

In denying Petitioner's MAR, the state trial court applied the two-pronged test set out above and concluded that Petitioner "failed to establish that his attorney's performance fell below an objective standard of reasonableness." This Court agrees. Most of Petitioner's sub-claims are conclusory and may be dismissed as such, <u>Nickerson v. Lee</u>, 971 F.2d 1125 (4th Cir. 1992). In addition, even on their face, several rely on the existence of error where none in fact exists. Petitioner's first ineffective assistance sub-claim, for example, is predicated on his contention that the trial judge wrongly "injected himself [into the trial] and cross-examined a witness." However, N.C. R. Evid. 614(b) clearly provides that "[t]he court may interrogate witnesses, whether called by itself or by a party."[6] And, as noted earlier, Petitioner provides no factual basis for his claim that the court's questioning in this instance violated his due process rights or merited an objection for any other reason. In addition, he fails

---

[6]Subdivisions (a) and (b) of this rule are identical to Fed. R. Evid. 614(a) and (b).

to show that counsel's failure to object changed the outcome of his case.

Petitioner's second sub-claim, which is based on his earlier search and seizure allegation, fails for much the same reason. Petitioner's counsel actually filed a motion to suppress evidence. It was denied at trial, and in denying his MAR, the state court found that "[t]he search warrant was clearly not issued in violation of defendant's constitutional rights." Petitioner evidently now claims that evidence came out at trial that shows the search to be based on false evidence. This is apparently premised on his view that the evidence was first secured from the hospital prior to the issuance of the warrant. Petitioner asserts the search warrant itself should not be admissible. However, Petitioner does not demonstrate that counsel's failure to renew the objection to evidence taken pursuant to the warrant was unreasonable, that counsel's inaction led to a different outcome at trial, or that he did not have a full and fair opportunity for state court review.

Petitioner's final sub-claim regarding trial counsel also fails under the two-part Strickland test. Specifically, Petitioner claims that his attorney neglected to contact two key witnesses identified in the police report. While he asserts that these witnesses could prove his innocence, he gives no factual basis for this contention. In fact, Petitioner claims nothing more regarding

-11-

one witness, a Ms. Tiller, than that "she had information about the burglary."  This information could just as easily implicate Petitioner in the crime as it could prove his innocence.  It is also unclear from Petitioner's argument whether the second potential witness, Ms. Barney, has any actual, personal knowledge of the burglary in question, such that omitting her testimony constitutes error.  In any event, there is no indication that added witnesses would have made any difference in the outcome of the trial given that the evidence against Petitioner, particularly the presence of his blood at the crime scene, was substantial and overwhelming.  The evidence in this case rendered any deficiencies in representation harmless and made prejudice extremely unlikely.

As for appellate counsel, counsel need not raise on appeal every non-frivolous issue requested by defendant. Jones v. Barnes, 463 U.S. 745(1983);  see also Smith v. Murray, 477 U.S. 527 (1986); Smith v. South Carolina, 882 F.2d 895 (4th Cir. 1989)(refusal of appellate counsel to raise a non-frivolous claim on direct appeal does not constitute cause for procedural default); Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989)(declaring that counsel pursued sound trial strategy when "he determined what he believed to be petitioner's most viable arguments and raised them on appeal"); Griffin v. Aiken, 775 F.2d 1226 (4th Cir. 1985).  This is particularly true where, as in this case, the underlying claims are ultimately meritless.

-12-

**IT IS THEREFORE RECOMMENDED** that Respondent's motion for summary judgment (docket no. 4) be granted, that the habeas petition (docket no. 1) be denied, and that Judgment be entered dismissing this action.


_____
                                         **United States Magistrate Judge**


January 22, 2007